UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SALLY A. VANBENSCHOTEN,

                        Plaintiff,

v.                                                              1:16-CV-0057 (GTS)

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
_____

APPEARANCES:                                      OF COUNSEL:

OFFICE OF PETER M. MARGOLIUS          PETER M. MARGOLIUS
  Counsel for Plaintiff
7 Howard Street
Catskill, NY 12414

U.S. SOCIAL SECURITY ADMIN.              FERGUS J. KAISER, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

      Currently before the Court, in this Social Security action filed by Sally A. Vanbenschoten ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are Plaintiff's motion for judgment on the pleadings and Defendant's motion for judgment on the pleadings. (Dkt. No. 11, 12.) For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is denied and Defendant's motion for judgment on the pleadings is granted. The Commissioner's decision denying Plaintiff's disability benefits is affirmed, and Plaintiff's Complaint is dismissed.

I.   **RELEVANT BACKGROUND**

   A.   **Factual Background**

Plaintiff was born in 1982, making her 27 years old at the alleged onset date and 32 years old at the date of the final Agency decision. Plaintiff has a ninth grade education, and past work as a server, food preparation worker, and waitress. Plaintiff was insured for disability benefits under Title II until December 31, 2012. Generally, Plaintiff alleges disability consisting of low back pain and a hearing impairment that is worse in her right ear.

   B.   **Procedural History**

Plaintiff applied for Title II Disability Insurance Benefits on December 11, 2012, and Title XVI Supplemental Security Income on December 12, 2012. In both applications, Plaintiff alleged disability beginning November 1, 2009. Plaintiff's application was initially denied on February 21, 2013, after which she timely requested a hearing before an Administrative Law Judge ("ALJ"). On April 28, 2014, Plaintiff appeared at a hearing before ALJ Robert Wright. On July 24, 2014, the ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 11-27.) On November 5, 2015, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (T. 1-3.)

   C.   **The ALJ's Decision**

Generally, in his decision, the ALJ made the following six findings of fact and conclusions of law. (T. 13-21.) First, the ALJ found that Plaintiff has not engaged in substantial gainful activity since November 1, 2009, the alleged onset date. (T. 13.) Second, the ALJ found that Plaintiff's degenerative disc disease of the lumbar spine is a severe impairment, while her hearing impairment, knee pain, asthma, carpal tunnel syndrome, depression, anxiety, and obesity are not severe. (T. 13-14.) Third, the ALJ found that Plaintiff's severe impairment does not

meet or medically equal one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings"). (T. 16.) More specifically, the ALJ considered Listing 1.00 (musculoskeletal impairments). (*Id.*) Fourth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform

> semi-skilled work with the ability to sit four hours in an eight-hour day, stand and walk four hours in an eight-hour day with no work on ladders or scaffolding, no crouching or crawling and only occasional stooping, kneeling, climbing, working with moving machinery, exposure to temperature extremes, dust or fumes, and she would need to change position every hour.

(T. 16.) Fifth, the ALJ found that Plaintiff has past work as a server, food preparation worker, and waitress, though the ALJ also found that Plaintiff is unable to perform this past work based on the restrictions in the RFC. (T. 20-21.) Sixth, and finally, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including telemarketer, customer service representative, and information clerk. (T. 21-22.)

### D. The Parties' Briefings on Their Cross-Motions

Generally, Plaintiff asserts two arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues that the RFC determination was not supported by substantial evidence. More specifically, Plaintiff argues that substantial evidence did not support the ALJ's finding that Plaintiff could perform semi-skilled work because the ALJ acknowledged that Plaintiff only had a limited education. (Dkt. No. 11, at 3 [Pl. Mem. of Law].) As a corollary, Plaintiff also challenges whether she would be able to perform the General Education Development ("GED") requirements[1] of some of the provided jobs based on her ninth grade

---

[1] General Education Development requirements indicate the level of ability an individual needs to possess in the educational areas of Reasoning Development, Mathematical

education.  (Dkt. No. 11, at 4-6 [Pl. Mem. of Law].)  Second, Plaintiff argues that the ALJ's conclusion at Step Five that Plaintiff could perform certain semi-skilled occupations conflicts with his hypothetical questions to the vocational expert that assumed a restriction to unskilled work.  (Dkt. No. 11, at 3-4 [Pl. Mem. of Law].)

Generally, Defendant asserts two arguments in support of her motion for judgment on the pleadings.  First, Defendant argues that the ALJ's finding that Plaintiff could perform semi-skilled work was supported by her work history and the lack of any mental impairment that would prevent her from performing semi-skilled work.  (Dkt. No. 12, at 6-7 [Def. Mem. of Law].)  Defendant also argues that there was no inconsistency between the RFC and the GED requirements of the identified occupations.  (Dkt. No. 12, at 9 [Def. Mem. of Law].)  Second, Defendant argues that there was no error in relying on the vocational expert's identification of semi-skilled occupations in response to a hypothetical question that assumed a restriction to unskilled work because the ALJ ultimately found that Plaintiff could perform semi-skilled work. (Dkt. No. 12, at 8-9 [Def. Mem. of Law].)

## II.  RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for

---

Development, and Language Development in order to be able to perform a certain occupation. *See Dictionary of Occupational Titles,* App. C(III) (DEPT. OF LABOR, 1999).

doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

## B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982), *accord, McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

## III. ANALYSIS

### A. Whether the ALJ Erred in Finding Plaintiff Was Capable of Performing Semi-skilled Work Due to Her Limited Education

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 12, at 6-8 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

RFC is defined as "what an individual can still do despite his or her limitations." SSR 96-8p, 1996 WL 374184 (July 2, 1996). In assessing a claimant's RFC, the ALJ "must consider only limitations and restrictions attributable to medically determinable impairments." *Id*. SSR 96-8p more specifically indicates that "[i]t is incorrect to find that an individual has limitations or restrictions beyond those caused by his or her medical impairment(s) including any related symptoms, such as pain, due to factors such as age or height, or whether the individual had ever engaged in certain activities in his or her past relevant work." *Id*.

Plaintiff's argument asserting a lack of substantial evidence to support an ability to perform semi-skilled work is not availing. Plaintiff does not allege that she has a mental impairment that would prevent her from performing semi-skilled work or that the effects of her physical impairments or pain medications produce such a limitation. Instead, Plaintiff asserts that the mere fact that she has a ninth grade education is substantial evidence to support a finding that she is limited to unskilled work. (Dkt. No. 11, at 3-4 [Pl. Mem. of Law].) However, Plaintiff does not provide any legal support for this assertion. To the contrary, SSR 96-8p indicates that the ALJ is allowed to consider only limitations stemming from medically determinable impairments when assessing the RFC, not other factors such as age, past work, or education. SSR 96-8p, 1996 WL 374184. Plaintiff has not shown that her ninth grade education

was due to or related to the effects of a medically determinable impairment. She has not alleged or shown the existence of a cognitive impairment that would impact her ability to perform semi-skilled work. She testified at the hearing that she had been in regular classes when in school and reported she was working towards obtaining her general equivalency diploma. (T. 48.) While there is some mention that Plaintiff had symptoms of depression and anxiety, there is little evidence of any treatment for these impairments and no evidence that they imposed any limitations on her mental functioning, either in the medical record or her own reports. (T. 15-16.) Because the fact that Plaintiff had a ninth grade education is not a sufficient basis for a conclusion that she has an RFC limitation to unskilled work, her argument is rejected.

Similarly, the Court is not persuaded by Plaintiff's argument that she was unable to perform the semi-skilled jobs identified by the vocational expert because of an asserted inconsistency between Plaintiff's ninth grade education and the GED levels for those jobs. Again, Plaintiff does not cite to any legal authority that supports her assertion. Although Plaintiff has only a ninth grade education, she was working on obtaining her general equivalency diploma and she had previously worked in a job that had a specific vocational preparation of five (which is classified as skilled work), supporting an ability to perform semi-skilled work. (T. 21, 48.) There is no evidence that she has since that time developed any impairment impacting her ability to perform mental demands in a workplace. *See Jackson v. Astrue*, No. 06-CV-6372, 2007 WL 1428442, at *9 (W.D.N.Y. Apr. 25, 2007) (finding that it was not evident that the plaintiff would be unable to perform jobs with Reasoning Development of up to 4, Mathematical Development up to 2, and Language Development up to 2 where she had completed eleven years of education and had general life experience including raising children, working, handling money, and maintaining a household). As indicated previously, there was no error in the ALJ's

finding that Plaintiff remained able to perform semi-skilled work and Plaintiff has not demonstrated how a person able to perform semi-skilled work would be unable to perform the GED requirements of the jobs listed by the vocational expert.

For all these reasons, the RFC determination regarding Plaintiff's ability to perform semi-skilled work was supported by substantial evidence, and remand is not required on this basis.

**B.     Whether the Vocational Expert's Testimony Based on Hypothetical Questions Including a Restriction to Unskilled Work Provided Substantial Evidence to Support the Step Five Finding**

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 12, at 8-9 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

At Step Five of the sequential process, the burden shifts to the Commissioner to establish that there is other work that exists in significant numbers in the national economy that a plaintiff can perform based on the plaintiff's RFC, age, education, and past relevant work. *Butts v. Barnhart,* 388 F.3d 377, 383 (2d Cir. 2004). "'Courts have generally held that what constitutes a 'significant number' is fairly minimal.'" *Rosa v. Colvin*, No. 3:12-CV-0170, 2013 WL 1292145, at *9 (N.D.N.Y. Mar. 27, 2015) (quoting *Fox v. Comm'r of Soc. Sec.,* No. 6.02-CV-1160, 2009 WL 367628, at *3 (N.D.N.Y. Feb. 13, 2009)). "The 'proper use of vocational testimony presupposes both an accurate assessment of the claimant's physical and vocational capabilities, and a consistent use of that profile by the vocational expert in determining which jobs the claimant may still perform.'" *Pardee v. Astrue*, 631 F.Supp.2d 200, 211 (N.D.N.Y. 2009) (quoting *Lugo v. Chater*, 932 F.Supp. 497, 503 (S.D.N.Y. 1996)). There also "must be 'substantial evidence to support the assumption upon which the vocational expert based his opinion.'" *Pardee*, 631 F.Supp.2d at 212 (quoting *Dumas v. Schweiker*, 712 F.2d 1545, 1554 (2d

9

Cir. 1983)). "If a hypothetical question does not include all of a claimant's impairments, limitations, and restrictions, or is otherwise inadequate, a vocational expert's response cannot constitute substantial evidence to support a conclusion of no disability." *Pardee*, 631 F.Supp.2d at 211 (citing *Melligan v. Chater*, No. 94-CV-944S, 1996 WL 1015417, at *8 (W.D.N.Y. Nov. 14, 1996)).

While Plaintiff is correct that the ALJ's hypothetical questions to the vocational expert specifically assumed that she would be limited to unskilled work, this fact does not create an inconsistency with the ALJ's ultimate RFC finding that would constitute reversible error. It is an inconsequential difference because an individual who can perform semi-skilled work is logically also capable of performing unskilled work; therefore, with a semi-skilled RFC, Plaintiff would have still been able to perform any unskilled jobs that would have been produced according to the ALJ's hypotheticals. *See* SSR 82-41, 1982 WL 31389 (noting that semi-skilled occupations are more complex than unskilled work). In any event, the ALJ specifically asked the vocational expert, "if my RFC was not limited to sedentary but it was limited to semi-skilled, those jobs [of telemarketer, customer service representative, and information clerk] would be applicable, is that correct?" to which the vocational expert responded in the affirmative. (T. 37.) The ALJ and the vocational expert therefore reconciled what Plaintiff asserts is a conflict, affirmatively indicating that these three jobs could still be performed if the hypothetical question was altered to an ability to perform semi-skilled work. There is therefore no inconsistency between the ALJ's hypothetical questioning, the vocational expert's testimony, and the RFC assessment that would prevent the vocational expert's testimony from constituting substantial evidence to support the ALJ's Step Five finding.

Although neither of the parties argued the matter, there is a corollary matter that requires attention to ensure an adequate review of the case by this Court. All of the occupations identified by the vocational expert (and accepted by the ALJ at Step Five) are classified by the Dictionary of Occupational Titles as semi-skilled positions. (T. 22, 34-37.) SSR 83-10 indicates that the "[a]bility to perform skilled or semiskilled work depends on the presence of acquired skills which may be transferred to such work from past job experience above the unskilled level or the presence of recently completed education which allows for direct entry into skilled or semiskilled work." SSR 83-10, 1983 WL 31251. Some courts have determined that, in order for an ALJ to consider semi-skilled positions at Step Five, he must first find that the plaintiff has transferable skills from past work that would enable her to perform more than unskilled work. *See Clark v. Colvin*, No. 14-CV-6782, 2016 WL 1254024, at *10 n.5 (E.D.N.Y. Mar. 31, 2016) (declining to decide this specific issue, but noting multiple out-of-circuit precedents that lent some support to the plaintiff's argument regarding the need for transferable skills in order to perform semi-skilled work at Step Five, and indicating that these out-of-circuit cases were consistent with SSR 83-10).

The ALJ in this case did not find that Plaintiff had transferable skills from any of her past work; he specifically declined to make a transferability analysis because he found that "[t]ransferability of job skills is not material to the determination of disability." (T. 21.) The ALJ did find that Plaintiff had past relevant work as a server, food preparation worker, and waitress; however, only one of these jobs (food preparation worker) is classified above the unskilled level and therefore this would be the only past work from which transferable skills could arise. (T. 34.). *See also Draegert v. Barnhart*, 311 F.3d 468, 473 (2d Cir. 2002) (quoting SSR 82-41, 1982 WL 31389) ("'Skills are not gained by doing unskilled jobs.'"). However, it is

11

not wholly clear that this job meets the definition of past relevant work outlined in the regulations; if it does not, Plaintiff could not have acquired transferable skills from that job under the regulations.[2] *See* SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000) ("Skills are acquired in [past relevant work] and may also be learned in recent education that provides direct entry into skilled work."). This raises the question of whether Plaintiff would have had transferable skills from her past work as a food preparation worker that would be applicable to the office-type work of the jobs identified by the vocational expert, if this Court were to accept that a finding of transferable skills is required where the ALJ relies on semi-skilled jobs at Step Five.

However, based on the circumstances of this case, the Court need not answer the question of whether transferable skills were required to support the Step Five finding. Although all of the jobs the vocational expert provided were classified in the Dictionary of Occupational Titles as semi-skilled with specific vocational preparation ("SVP") levels of three or four, the vocational

---

2  In order to qualify as past relevant work for consideration at Steps Four and Five, the work must have been performed within the past 15 years, for a sufficient duration for the individual to learn the job, and be substantial gainful activity. SSR 82-62, 1982 WL 31386. Plaintiff's work history reports indicate that the job in which she performed this food preparation work occurred when she was doing kitchen and housework duties at the Blackthorne Resort from March 2009 to October 2009. (T. 181.) (Additional work as a deli worker was reported in June 2007 to January 2008, but the vocational expert specifically found this work to be under a separate Dictionary of Occupational Titles number. (T. 34.)) Earnings records show that Plaintiff made $4,127 in 2009 from Blackthorne, an amount which is well below the presumptive amount of substantial gainful activity for eight months of work in 2009. *See Substantial Gainful Activity*, SOCIAL SECURITY ADMINISTRATION, https://www.ssa.gov/oact/cola/sga.html (indicating that the monthly substantial gainful activity earnings amount for 2009 was $980 for non-blind individuals). However, "'[a]lthough earnings below the guidelines will 'ordinarily' show that an employee has not engaged in substantial gainful activity, earnings below the guidelines will not conclusively show that any employee has not engaged in substantial gainful activity.'" *Richardson v. Colvin*, No. 15-CV-6276, 2016 WL 3179902, at *11 (W.D.N.Y. June 8, 2016) (quoting *Pickner v. Sullivan*, 985 F2.d 401, 403 (8th Cir. 1993)). Therefore, without any other explanation from the ALJ, there is a question as to whether Plaintiff's past work as a food preparation worker constituted past relevant work based on her earnings.

expert also testified that the job of telemarketer was, in his practical experience, "a very unskilled position because the people typically read from the same script over and over again," and he noted his opinion differed from the Dictionary of Occupational Titles in that respect. (T. 38.) The ALJ is entitled to rely on a vocational expert's testimony that conflicts with the Dictionary of Occupational Titles where the vocational expert provides an explanation to reconcile the conflict. *See* SSR 00-4p, 2000 WL 1898704 (noting that it is the ALJ's responsibility to ask if vocational expert testimony conflicts with the information provided in the Dictionary of Occupational Titles and, if it does conflict, obtain a reasonable explanation for the apparent conflict); *Brault v. Soc. Sec. Admin. Comm'r*, 683 F.3d 443, 446 (2d Cir. 2012) (noting that "a VE whose evidence conflicts with the DOT must provide a 'reasonable explanation' to the ALJ for the conflict"); *Brodbeck v. Astrue*, No. 5:05-CV-0257, 2008 WL 681905, at *9 (N.D.N.Y. Mar. 7, 2008) ("If a conflict exists between the evidence provided by the expert and the DOT, the ALJ must determine whether the expert's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the DOT."); *see also Abar v. Colvin*, No. 7:15-CV-0095, 2016 WL 1298135, at *11 (N.D.N.Y. Mar. 31, 2016) (noting that SSR 00-4p sets forth examples of reasonable explanations for conflicts that may provide a basis for the ALJ to rely on a vocational expert's evidence conflicting with the Dictionary of Occupational Titles, including where there are aspects of the job not listed in the Dictionary of Occupational Titles and "a vocational expert may have additional information about a particular job's requirements based on the vocational expert's experience").

Additionally, the vocational expert testified that there were 245,550 telemarketer positions in the national economy and 11,210 such positions in New York State. (T. 35-36.) Therefore, the vocational expert's testimony provided substantial evidence that there were a

13

significant number of what, in the vocational expert's opinion, constituted unskilled jobs in the national economy that Plaintiff could perform. *See Roe v. Colvin*, No. 1:13-CV-1065, 2015 WL 729684, at *7 (N.D.N.Y. Feb. 19, 2015) (indicating that 630 jobs locally and 44,000 jobs nationally were a significant number); *Fox*, 2009 WL 367628, at *3 (upholding the magistrate judge's finding that the ALJ had shown a significant number of jobs existed where, even though the only occupation identified was that of surveillance systems monitor, the VE testified the amount of these jobs was "a small percentage lower" than 132,980 nationally and 200 in the central New York region); *see also Hamilton v. Comm'r of Soc. Sec.*, 105 F.Supp.3d 223, 229-31 (N.D.N.Y. 2015) (collecting cases in which the specific number of occupations in the regional and national economy provided by the vocational experts were or were not held to be a 'significant number'). Therefore, there is no need to determine whether the ALJ's reliance on semi-skilled work at Step Five without making a transferable skills determination was legal error, because, based on the vocational expert's testimony, the telemarketer occupation would satisfy the Commissioner's burden at Step Five regardless of that determination.

For all these reasons, the ALJ's Step Five finding was supported by substantial evidence and remand is not required on this basis.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is **<u>DENIED</u>**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 12) is **<u>GRANTED</u>**; and it is further

**ORDERED** that Defendant's decision denying Plaintiff disability benefits is **<u>AFFIRMED</u>**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: April 21, 2017
       Syracuse, New York

_____
Hon. Glenn T. Suddaby
Chief U.S. District Judge